UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RLI INSURANCE COMPANY
and CASSIDY TURLEY, INC.,

    Plaintiffs,

v.

WESTFIELD,

    Defendant.

Case No. 1:17-cv-491

Bowman, M.J.

**ORDER**

This civil action is before the Court on the Motion of Plaintiff, RLI Insurance Co., for Declaratory Judgment (Doc. 17), and the parties' responsive memoranda (Docs. 19, 22). Upon careful review, the Court finds Plaintiff's Motion to be well-taken.

**I.    BACKGROUND[1]**

**A. The Underlying Personal Injury Case**

Cincy Office Properties owns commercial buildings located at 644 Linn Street and 801 W. 8th Street in Cincinnati, Hamilton County, Ohio, known collectively as the "Holiday Office Park." (Doc. 1 at PageID 2 (¶ 9), Doc. 11 at PageID 318 (¶ 4).) On

---

[1] Attached to Defendant's memorandum in opposition is the Affidavit of Michael P. Cussen, co-counsel for Defendant Westfield in this litigation and for Cincy Office Properties in a personal injury action pending in the Hamilton County, Ohio Court of Common Pleas captioned, *Heather Everett v. Cincy Office Properties, Inc., et al.*, No. A 1405220. (*See* Doc. 19-1 at PageID 351 (¶¶ 1–3), 355.) As necessary, background facts are drawn from Mr. Cussen's testimony therein, as well as the complaint filed in the underlying personal injury case that is attached. That complaint, of course, is a public record of which the Court may—and does—take judicial notice. *See Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980); *see also Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), *abrogated on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). Background facts also are drawn from the Complaint for Declaratory Judgment filed by RLI Insurance Company and Cassidy Turley, Inc. against Westfield (Doc. 1) in this civil action, to which is attached a Property Management Agreement between Cincy Office Properties, Inc. and Cassidy Turley Ohio, Inc. (Doc. 1-1) and a Commercial Package Policy between Cincy Office Properties Inc. and Westfield Insurance Company (Doc. 1-2), in addition to Westfield's Answer thereto (Doc. 11).

1

September 25, 2012, Heather Everett attempted to enter the passenger elevator in the W. 8th Street building when the elevator cab door "shut suddenly, unexpectedly, and violently" on her foot, causing her "injuries and damages." (Doc. 19-1 at PageID 357 (¶ 8).) On September 3, 2014, Ms. Everett sued a number of entities, including Cincy Office Properties, Defendant Cassidy Turley,[2] and Fujitec America, in the Hamilton County, Ohio Court of Common Pleas. (*Id.* at PageID 354–81.) Cassidy Turley is represented by attorney Robert Goering—presumably hired by Plaintiff RLI[3]—who entered an appearance in October 2014. (*Id.* at PageID 351 (¶ 5).) On behalf of Cassidy Turley, Mr. Goering filed an answer and served and responded to written discovery. (*Id.* at PageID 351 (¶ 5), 352 (¶ 6).) He also has participated in retaining expert witnesses and deposing Ms. Everett and her expert witness. (*Id.* at PageID 352 ¶¶ 7, 8).) Mr. Goering filed a motion for summary judgment on the issue of liability, and has played a role in the selection, and continuance, of multiple trial settings. (*Id.* at (¶¶ 9, 10).) When the parties were preparing to schedule a mediation, however, for the first time RLI requested that Cincy Office Properties and Westfield Insurance Company defend and indemnify Cassidy Turley. (*Id.* (¶ 11); *see* Doc. 1 at PageID 3 (¶ 18) and Doc. 11 at PageID 320 (¶ 15).)[4] In response, Westfield "denied Cassidy Turley Ohio,

---

[2] "Cassidy Turley Commercial Real Estate Services, Inc., d.b.a. Cassidy Turley" is the actual entity named in the underlying personal injury case. (*See* Doc. 19-1 at PageID 356 (caption), 363–66 (¶¶ 38–57).)

[3] The pleadings establish that Cassidy Turley Ohio, Inc. is a Named Insured under a Commercial General Liability Policy with RLI bearing Policy No. CGL0013616 for the policy period of August 1, 2012 through August 1, 2013. (Doc. 1 at PageID 1–2 (¶ 4); Doc. 11 at PageID 318 (¶ 2).) The Policy itself is not in evidence.

[4] Neither party has provided the Court with the precise date upon which Cassidy Turley Ohio tendered Ms. Everett's claim to Westfield. In its Answer, Westfield admits only that the claim was tendered "in 2017." (Doc. 11 at PageID 320 (¶ 15).) Based on Mr. Cussen's testimony, and the docket sheet of the underlying personal injury case, it may be reasonably inferred that the tender occurred on or about September 1, 2017, the date Cincy Office Properties and Cassidy Turley Ohio filed a joint motion to continue the trial date with the Hamilton County, Ohio Court of Common Pleas. *Heather Everett v. Cincy*

Inc.'s status as an insured and denied the tender of defense and indemnity." (Doc. 1 at PageID 3 (¶ 19); *see* Doc. 11 at PageID 320 (¶ 16).)

Ms. Everett's personal injury case is ongoing.

### B. The Property Management Agreement

Cincy Office Properties entered into a Property Management Agreement with Cassidy Turley Ohio[5] to be the exclusive property manager for the Holiday Office Park. (Doc. 1-1 at PageID 5 (Recitals and § 2.1).) In this capacity, Cassidy Turley Ohio was required to "perform or cause to be performed all repairs, maintenance, cleaning and replacements in and to the Property . . . including the administration of a preventative maintenance program for all mechanical, electrical and plumbing systems and equipment[.]" (*Id.* at PageID 8 (§ 2.8).) The Property Management Agreement required Cincy Office Properties to provide commercial general liability insurance with respect to the Holiday Office Park and its operations:

> ARTICLE VII
> INSURANCE AND INDEMNIFICATION
>
> 7.1 <u>Owner Insurance</u>. Owner, at its expense, shall maintain and keep in force: (a) "all risk" property insurance insuring the Property; and (b) a commercial general liability insurance policy written on an occurrence-form basis, with limits of not less than $1,000,000 per occurrence and $2,000,000 aggregate combined single limit, with respect to the Property and its operations. **Owner's insurance shall include Manager as an additional insured with respect to work performed within the scope of Manager's duties hereunder**, and, to the extent permitted by the insurer, such policy shall not be cancelled without at least thirty (30) days' prior written notice to Manager. **Owner's insurance shall be primary with respect to bodily injury, personal injury** and

---

*Office Properties, Inc., et al.*, No. A 1405220  https://courtclerk.org/data/case_summary.php (last visited June 7, 2018).

[5] Although the caption of the Complaint for Declaratory Judgment lists "Cassidy Turley, Inc." as co-Plaintiff, the body of the pleading refers instead to "Cassidy Turley <u>Ohio</u>, Inc." The body of Defendant Westfield Insurance Company's Answer also refers consistently to "Cassidy Turley <u>Ohio</u>, Inc."

property damage **claims covered by both Owner's and Manager's commercial general liability insurance policies carried pursuant to this Section 7.1 and Section 7.2 hereof**. Owner shall furnish, or cause to be furnished to Manager, certificates of insurance and endorsements evidencing the foregoing insurance.

(Doc. 1-1 at PageID 14 (emphases added).) Other provisions of Article VII of the Property Management Agreement cited by the parties are:

> 7.8 <u>Mutual Waivers</u>. **Owner**, on behalf of itself and its insurers, **waives its rights of recovery against Manager** or any person who holds a direct or indirect ownership interest in Manager and their respective officers, directors, members, partners, shareholders, employees, agents, and the successors and assigns of each of them, **for damages sustained by Owner as a result of** any damage to the Property or damage to property of others or **bodily injury** or death arising from any risk or peril **to the extent covered by any insurance policy actually carried by Owner** and/or coverable by any insurance policy required to be carried by Owner pursuant to the terms of this Agreement (whether or not such required insurance policy is actually carried by Owner), **and Owner agrees that no party shall have any such right of recovery by way of subrogation or assignment**. **Manager**, on behalf of itself and its insurers, **waives its rights of recovery against Owner** or any person who holds a direct or indirect ownership interest in Owner and their respective officers, directors, members, partners, shareholders, employees, agents, and the successors and assigns of each of them, **for damages sustained by Manager as a result of** any damage to its property or damage to property of others or **bodily injury** or death arising from any risk or peril to the extent **covered by any insurance policy actually carried by Manager** or required to be carried by Manager pursuant to the terms of this Agreement (whether or not such required insurance policy is actually carried by Manager), and **Manager agrees that no party shall have any such right of recovery by way of subrogation or assignment.** Owner and Manager shall each notify their respective insurance carriers of the mutual waivers herein contained and shall cause their respective insurance policies required hereunder to be endorsed, if necessary, to prevent any invalidation of coverage as a result of the mutual waivers herein contained. Owner and Manager hereby waive all claims for incidental, consequential and punitive damages related to the Agreement.

4

7.9 <u>Indemnification</u>

(a) <u>Indemnity by Owner</u>. **Owner shall indemnify, defend, hold and save Manager** and Manager Indemnified Party **free and harmless from and against any and all claims**, demands, causes of action, suits, liabilities, damages, losses, judgments, costs and expenses of any kind or nature whatsoever (including reasonable attorneys' fees and costs), **which Manager** or any Manager Indemnified Party **may suffer or incur, in connection with the Property or the performance by Manager of any of its duties and obligations under this Agreement except to the extent such claims**, demands, causes of action, suits, liabilities, damages, losses, judgments, costs and expenses **arise out of** any actions outside the scope of the authority granted hereunder or **the negligence** or misconduct **of Manager, its agents, employees or independent contractors**, or otherwise out of Manager's breach of any of its obligations under this Agreement.

(b) <u>Indemnity by Manager.</u> **Manager shall indemnify, defend, hold and save Owner**, its officers, directors, members, partners, shareholders, employees, agents, and the successors and assigns of each of them (each, a "Owner Indemnified Party") **free and harmless from and against any and all claims**, demands, causes of actions, suits, liabilities, damages, losses, judgments, costs and expenses of any kind or nature whatsoever (including reasonable attorneys' fees and costs), **which Owner** or any Owner Indemnified Party **may suffer or incur** in connection with or **arising out** of any actions outside the scope of the authority granted hereunder or **the negligence** or misconduct **of Manager, its agents, employees or independent contractors**, or otherwise out of Manger's breach of any of its obligations under this Agreement.

(c) <u>Relationship to Insurance.</u> **In no event shall the indemnification provisions of this Agreement** diminish, **affect**, impede or impair, **in any manner whatsoever, the benefits to which any party may be entitled under any insurance policy required by this Agreement** or otherwise, or under the terms of any waiver of subrogation contained therein.

(*Id.* at PageID 16–17 (emphases added).)

**C. The Insurance Contract between Westfield and Cincy Office Properties**

Westfield issued to Cincy Office Properties a Commercial Package Policy Renewal bearing Policy No. TRA 5 685 426 for the policy period March 16, 2012 through March 16, 2013. (Doc. 1-2 at PageID 48 ("Westfield Policy").) As required by the Property Management Agreement, Cassidy Turley Ohio—as Cincy Office Properties' "real estate manager" is an insured:

> SECTION II – WHO IS AN INSURED
>
> . . . .
>
> 2. Each of the following is also an Insured:
>
> . . . .
>
> b. Any person (other than your "employee" or "volunteer worker["]), or any organization while acting as **your real estate manager**.

(*Id.* at PageID 188–89 (CG 00 01  12 07 Pages 9–10 of 16) (emphasis added).)[6] As also required by the Property Management Agreement, the coverage provided by the Westfield Policy is primary:

---

[6] The Amendment to this provision adds a new item:

> 6. Managers or Lessors of Premises
>
> **Any** persons(s) or **organizations(s) with whom you agree in a written contract or agreement to name as an insured but only with respect to liability arising out of** the ownership, **maintenance** or use of that part of the premises leased to you and subject to the following additional exclusions:
>
> This insurance does not apply to:
>
> (1) Any "occurrence" which takes place after you cease to be a tenant in that premises.
> (2) Structural alternations, new construction or demolition operations performed by or on behalf of the person(s) or organizations(s).

(*Id.* at PageID 211–12 (CG 70 93  08 05 Pages 4–5 of 5) (emphasis added).)

6

SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

. . . .

4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. Primary Insurance

**This insurance is primary** except when Paragraph b. below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in Paragraph c. below.

(*Id.* at PageID 190–91 (CG 00 01  12 07 Pages 11–12 of 16) (emphasis added).)  There is no contention by Westfield that the "excess insurance" exceptions set forth in Paragraph 4(b) apply.

**D. Procedural Posture**

On July 20, 2017, RLI and Cassidy Turley Ohio filed a Complaint for Declaratory Judgment against Westfield pursuant to 28 U.S.C. § 2201.[7]  (Doc. 1.)  In that pleading, they ask the Court to declare that "Westfied owes Cassidy Turley Ohio, Inc. a duty to defend and indemnify the claims asserted in Hamilton County Case Number A1405220."  (*Id.* at PageID 4.)  They also ask for an award of "costs, expenses and reasonabl[e] attorneys' fees" incurred by them in the prosecution of this civil action.  (*Id.*)

---

[7] Section 2201(a) provides in pertinent part:

In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

The parties consented to the jurisdiction of the undersigned in their Joint Discovery Plan filed on October 24, 2017. (Doc. 13 at PageID 324.) Plaintiff's Motion followed on December 15, 2017. (Doc. 17.)

## II. STANDARD OF LAW

A grant of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As "the requirement [of the Rule] is that there be no **genuine** issue of **material** fact," the Supreme Court has made clear that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). Ancillary factual disputes, those "that are irrelevant or unnecessary[,]will not be counted." *Id.* "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

## III. ANALYSIS

### A. Summary of the Arguments of the Parties

Under the express terms of the Westfield Contract, Cassidy Turley Ohio—as property manager for the Holiday Office Park—is an insured entitled to liability coverage for the claims asserted in the underlying personal injury case. Also under the express terms of the Westfield Contract, that liability coverage is *primary*, and no exceptions apply. Thus, RLI maintains that Westfield "owes sole, primary coverage for the defense and indemnification of Cassidy Turley [Ohio] against the claims asserted in the underlying [personal injury] case." (Doc. 17 at PageID 339.)

Westfield counters that "[t]he accident which gives rise to the underlying litigation is alleged to have occurred because [Cassidy Turley Ohio] was negligent in its duties and allowed the elevator door to be in disrepair." (Doc. 19 at PageID 346.) Westfield cites the testimony of Heather Everett's expert in the underlying litigation, Shawn Johnson, who has opined that Ms. Everett's injury resulted from the failure of Fujitech personnel to adjust Elevator No. 2's "upthrust roller" during a mandated five-year inspection on February 28, 2012.[8] (Doc. 21 at PageID 422–27, 437, 453–60, 473.)[9] Under the indemnification provisions of the Property Management Agreement, therefore, "it is Cassidy Turley [Ohio] and its insurer [RLI] **not** Cincy Office Properties that owns the duty for defense and indemnification." (Doc. 19 at PageID 347 (emphasis added) (citing Doc. 1-1 at PageID 17 (§ 7.9(b)).) Moreover, because Cincy Office Properties as "Owner" and Cassidy Turley Ohio as "Manager" waived their rights of recovery against each other for damages sustained as a result of claims for bodily injury, Cassidy Turley Ohio and its insurer RLI have no cause of action. (*Id.* at PageID 348 (citing Doc. 1-1 at PageID 16 (§ 7.8)).) Finally, in Westfield's view, the tender of defense and indemnity was not timely made. (*Id.* at PageID 349.) Thus, the claims of

---

[8] Mr. Johnson additionally testified that the upthrust roller also should have been adjusted in connection with a subsequent service call on April 21, 2012. (Doc. 21 at PageID 438–53.) However, the "ticket" issued with respect to that call refers to Elevator No. 1 ("PE-1"), not Elevator No. 2. (*See* Doc. 21-6.)

[9] Cassidy Turley Ohio apparently hired Fujitech to maintain the elevators in the buildings that comprise the Holiday Office Park. In Mr. Johnson's opinion, Fujitech failed to test the door force on Elevator No. 2 during the February 28, 2012 inspection. Had that been done, Fujitech would have discovered that the upthrust roller was not properly adjusted. (Doc. 21 at PageID 473.) And, when not properly adjusted, "it's possible for [Everett's] foot to still be in the elevator and for the elevator to ascend." (*Id.* at PageID 472.) Johnson explained that "[i]f you don't do anything with the upthrust, the door will still open and close." (*Id.* at PageID 450–51.) "[The elevator door] was not off the track. It is on the track. The upthrust holds it on the track if the doors are hit in any way. So in that period of time, the doors were not hit, similar to Heather Everett's incident. So the idea that door can run perfectly normal for six months, a year, two years, three years, four years, whatever you want, until that type of incident happens. And if you would have checked the doors, meaning the torque testing that they said they did just months before, they would have noticed that the upthrust was not working properly." (*Id.* at PageID 451–52.)

9

RLI and Cassidy Turley Ohio are barred by the doctrines of waiver and estoppel. (*Id.* at PageID 348–49.)

RLI replies that the Westfield's Contract expressly provides primary insurance to RLI's insured, Cassidy Turley Ohio. The indemnification provisions set forth in Property Management Agreement—an agreement between Cassidy Turley Ohio and *non-party* Cincy Office Properties—is not only irrelevant to the insurance contract interpretation question before the Court, but also amounts to impermissible parol evidence. (Doc. 22 at PageID 631–33.) And even if it was appropriate to consider, Section 7.9(c) specifically states that the indemnification provisions "shall have no effect whatsoever on the issue of insurance." (*Id.* at PageID 633 (citing Doc. 1-1 at PageID 17 (§ 7.9(c)).) As for waiver and estoppel, RLI argues that Ohio law permits "one insurer to defend, and even settle, an underlying claim before seeking a coverage priority determination against a co-insurer who refuses to participate in the defense of the co-insured." (*Id.* at PageID 634 (citing *Sanderson v. Ohio Edison Co.*, 69 Ohio St. 3d 582, 587, 635 N.E.2d 19, 24 (1994) (citing *Aetna Cas. & Sur. Co. v. Buckeye Union Cas. Co.*, 157 Ohio St. 385, 635 N.E.2d 568 (1952)).) From a timing standpoint, RLI notes that both of Westfield's insureds, Cincy Office Properties and Cassidy Turley Ohio, were originally named as defendants in the underlying personal injury case. Westfield did not then recognize that Cassidy Turley Ohio was entitled to defense and indemnification, and, once notified, "wrongfully" refused to provide it. (*Id.* at PageID 634.) Westfield cannot show prejudice in this scenario as it was "undisputedly on notice of the underlying claim against Cassidy Turley from the outset." (*Id.*) Westfield also cannot claim waiver and

10

estoppel when RLI, as the secondary insurer, in good faith simply continues to provide a defense for its insured. (*Id.*)

**B. Plaintiff is Entitled to a Declaratory Judgment in its Favor**

"An insurance policy is a contract." *Westfield Ins. Co. v. Galatis*, 100 Ohio St. 3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, at ¶ 9. "When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement." *Id.* at ¶ 11. "When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Id.* "As a matter of law, a contract is unambiguous if it can be given a definite legal meaning. *Id.*

The Westfield Policy is clear and unambiguous. According to its express terms, Cassidy Turley Ohio, as the "real estate manager" for the Holiday Office Park owned by Cincy Office Properties, is an "insured" under the policy and thus is entitled to liability coverage for the claims asserted in the underlying personal injury case. Furthermore, the Westfield Policy expressly states that its liability coverage is "primary." Inasmuch as none of the exceptions specified in the policy apply, Westfield plainly owes primary liability coverage to Cassidy Turley Ohio.

Ironically, Westfield's opposition to RLI's Motion fails to cite—much less mention—the policy at issue. Rather, Westfield cites only to the Property Management Agreement between Cincy Office Properties and Cassidy Turley Ohio. Considering the clear language of the Westfield Policy, reference to the Property Management Agreement, specifically the indemnification provisions that appear at Sections 7.9(a) and (b), is prohibited. Even if permissible, however, Section 7.9(c) completely undercuts Westfield's contention vis-à-vis the question presented in this civil action for

declaratory judgment. (Doc. 1-1 at PageID 17 ("In **no** event shall the indemnification provisions of this Agreement diminish, affect, impede or impair, **in any manner whatsoever,** the benefits to which any party may be entitled under any insurance policy required by this Agreement . . . .") (emphases added).)

Westfield's waiver and estoppel arguments are misplaced. Ohio courts have applied the doctrines of waiver and estoppel to insurance contracts in certain instances. *See Turner Liquidating Co. v. St. Paul Surplus Lines Ins. Co.*, 93 Ohio App. 3d 292, 295, 638 N.E.2d 174, 176 (9th Dist. 1994) (citing *Pedler v. Aetna Life Ins. Co.*, 23 Ohio St. 3d 7, 490 N.E.2d 605 (1986) (estoppel); *Hounshell v. Am. States Ins. Co.*, 67 Ohio St. 2d 427, 424 N.E.2d 311 (1981) (waiver)). And at least one Ohio appellate court has extended the estoppel theory to a relationship between *insurers* as compared to one between an insurer and its insured. *Ins. Co. of N. Am. v. Travelers Ins. Co.*, 118 Ohio App. 3d 302, 323, 692 N.E.2d 1028, 1041–42 (8th Dist. 1997). But beyond citing authority to support these two general propositions of law, Westfield fails to explain how equity favors it in this instance.

Take, for example, *Travelers*. In that case, Morse Diesel, an insured under a comprehensive general liability policy issued by Travelers Insurance Company, was the general contractor for construction of a hotel. Morse subcontracted with Otis Elevator, which agreed to make Morse an additional insured on its insurance. *Id.* at 306, 692 N.E.2d at 1030. Insurance Company of North America ("INA") insured Otis through an "Owners and Contractors Protective Liability Insurance Policy," and their contract provided that this insurance was primary. *Id.* at 307, 692 N.E.2d at 1031. When an Otis employee was injured on site, because he fell on an exit ramp constructed by Morse,

12

Morse forwarded the claim to Travelers, which opened a claim file, began an investigation, and concluded tentatively that Morse was up to 85% negligent. When the Otis employee sued Morse, Morse forwarded the complaint to Otis. Otis, in turn, sent the complaint to INA and asked that INA defend Morse. Otis later informed Morse and Travelers that INA had assumed the defense of Morse. Because defense of the case had *not* been tendered to Travelers, and because INA had *not* served a reservation of rights, Travelers closed its file on the claim. *Id.* INA took full charge of the defense for the next year, but then concluded it had no coverage on the risk because it occurred on an exit ramp. *Id.* at 307–08, 692 N.E.2d at 1031. Approximately two months before trial, INA demanded that Travelers assume the defense of Morse. Travelers declined, taking the position that INA waived tender of the suit because it assumed Morse's defense without a reservation of rights. *Id.* at 308, 692 N.E.2d at 1031. INA thereafter settled the personal injury claim on Morse's behalf, then brought a suit for declaratory judgment against Travelers to recover the settlement amount plus the attorney's fees and expenses incurred in defending Morse. *Id.*, 692 N.E.2d at 1032.

The Court of Appeals of Ohio, Eighth District, considered whether the underlying personal injury action was covered by the INA policy; whether, regardless, INA had a duty to defend Morse; if so, did INA, because it undertook the duty to defend without a reservation of rights, waive its right or estop itself from later claiming a noncoverage defense under its policy; whether INA acted as a volunteer in settling the Morse claim after it discovered and asserted its noncoverage defense; and, finally, whether Travelers was prejudiced by INA's one-year delay in asserting its noncoverage defense. *Id.* at 310, 692 N.E.2d at 1033. Because the injury occurred on an exit ramp

13

to the site as opposed to an area in which Otis was then performing subcontracting work for Morse, the appellate court affirmed the trial court's implicit ruling that INA's coverage did not extend to the claim. *Id.* at 311, 692 N.E.2d at 1033–34. Nonetheless, INA had a duty to defend because the underlying tort stated a claim "potentially or arguably" within policy coverage. *Id.* at 311–13, 692 N.E.2d at 1034–35. Finding expressly that INA was *not* a secondary insurer to Travelers, and thus distinguishing *Sanderson*, *supra*, 69 Ohio St. 3d at 587, 635 N.E. at 24 ("[A] primary insurer violates its duty to defend at its own peril, and [ ] its breach of that duty will make it liable for anything the secondary insurer had to pay in a good-faith settlement of the claim as a result of the primary insurer's breach of that duty.") (citing *Aetna Cas. & Sur. Co.*), the appellate court found that INA was a volunteer and, accordingly, not entitled to recover from Travelers. *Id.* at 314, 692 N.E.2d at 1035–36. And as a volunteer that provided a defense to its insured without reserving its rights under the policy, it has waived its right to thereafter avoid liability:

> The very reasons that motivate the requirement of a reservation of rights between the insured and its insurer apply with equal force to the circumstances of this case. As a matter of public policy, the obligation of a reservation of rights is a signal to others affected by the outcome of the litigation (in this case Morse **and** Travelers) that they no longer have to continue to concern themselves with the defense of the suit or liability to the claimant. They may sensibly assume that INA was fully protecting their interests. The conventions in the insurance industry are dependent upon such notices. If one is not given, as it was not here, both the insured and its other insurer are lulled into the belief that the other carrier, here INA, has assumed full responsibility for the matter. No further attention need be given to the claim nor reserves established for defense costs or indemnification. The same **prejudice** results to Travelers as results to Morse in losing control of the litigation and opportunities for different defense strategies and settlement.

14

*Id.* at 322–23, 692 N.E.2d at 1041 (first emphasis in original, second emphasis added).

*Travelers* is easily distinguished from the facts here. First, and fundamentally, RLI does not assert, as INA did, that it owes *no* coverage for the claim. Rather, it maintains that its policy provides coverage, but *secondary* to Westfield's. Westfield's subtle attempt to focus this Court's attention on whether RLI has issued a reservation of rights letter to Cassidy Turley Ohio, therefore, is a red herring.[10] Furthermore, Westfield cannot, and makes no attempt to, demonstrate prejudice. *See Dietz-Britton v. Smythe, Cramer Co.*, 139 Ohio App. 3d 337, 345–49, 743 N.E.2d 960, 966–69 (8th Dist. 2000); *see generally Fairfield Mach. Co., Inc. v. Aetna Cas. and Sur. Co.*, No. 2000 CO 14, 2001 WL 1665624, at *9–10 (Ohio App. 7th Dist. Dec. 28, 2001). RLI curiously provides no explanation for why it took nearly three years to tender Ms. Everett's claim to Westfield for defense and indemnity. Still, *both* of Westfield's insureds, Cincy Office Properties *and* Cassidy Turley Ohio, were named in the complaint filed by Ms. Everett on September 3, 2014, with Westfield in full control of the litigation from the beginning. *See Admiral Ins. Co. v. Community Ins. Group SPC Ltd.*, No CV-14-08152-PCT-PGR, 2015 WL 10943606 (D. Ariz. May 13, 2015) ("CIG was not only on notice of the underlying litigation [against the physician], but also was involved in that litigation through its provision of the defense for the [Clinic that employed the physician]."). No prejudice, assumed or actual, can attach under these circumstances.

Plaintiff's Motion asks this Court to determine whether there is coverage under the Westfield Policy, a question the undersigned answers in the affirmative. However, the Court renders no opinion on what effect—if any—the indemnification provisions of

---

[10] Westfield implies that RLI failed to issue a reservation of rights letter, but presents no evidence on this point.

15

the Property Management Agreement will have in the event the underlying personal injury case resolves in Ms. Everett's favor, whether through settlement or a jury verdict.

## IV. CONCLUSION

Consistent with the foregoing analysis, the Motion of Plaintiff, RLI Insurance Company, for Declaratory Judgment (Doc. 17) is hereby **GRANTED**.  The Court declares that Defendant Westfield owes Plaintiff Cassidy Turley Ohio defense and indemnification for the claims asserted in the personal injury case pending in the Hamilton County, Ohio Court of Common Pleas captioned, *Heather Everett v. Cincy Office Properties, Inc., et al.*, No. A 1405220.  The Court further declares that Plaintiffs are entitled to an award of attorney's fees and costs in connection with filing and prosecuting this civil action.  If the parties are unable to agree to an appropriate award, Plaintiffs shall file a motion therefor in compliance with Fed. R. Civ. P. 54(d) and S. D. Ohio Civ. R. 54.2(a).

**IT IS SO ORDERED.**

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge
